FILED
CLERK, U.S. DISTRICT COURT
10/07/2026
CENTRAL DISTRICT OF CALIFORNIA
BY BOM DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

GABRIELLA BLACK
6 Eric St
Mission Viejo, CA 92694
Telephone: (480) 259-8288
Email: supremeg008@gmail.com
Plaintiff in Pro Per

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| GABRIELLA BLACK,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE; MIRIAM GALINDO; MAXIMILLIAN ZANCK; and DOES 1–10,<br><br>Defendants. | No. 8:25-cv-01217-JLS (RAO)<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132)<br>2. Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)<br>3. Violation of 42 U.S.C. § 1983<br>4. Battery<br>5. Assault<br>6. False Imprisonment<br>7. Intentional Infliction of Emotional Distress<br>8. Intentional Infliction of Emotional Distress (against Galindo, in the alternative)<br>9. Invasion of Privacy, Cal. Const. art. I, § 1 (against Galindo, in the alternative)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Gabriella Black, appearing in pro per, alleges as follows:

## I. INTRODUCTION

1. Plaintiff Gabriella Black ("Plaintiff") brings this action for injuries she suffered as a minor. Plaintiff sues only for harm done to her; she does not assert any claim on behalf of her mother or brothers, and facts about them are alleged only where needed to explain what happened to Plaintiff.

2. Plaintiff's federal claims are (a) disability-discrimination claims against the Superior Court of California, County of Orange (the "Superior Court"), which the Court's September 7, 2026 Order (Dkt. 120) (the "Order") dismissed with leave to amend, and (b) a claim under 42 U.S.C. § 1983 against Defendant Miriam Galindo limited to specific physical conduct that was not part of any adjudicative function. Plaintiff's state-law claims are against her father, Defendant Maximillian Zanck, for battery, assault, false imprisonment, and intentional infliction of emotional distress, over which this Court has diversity jurisdiction independent of the federal claims, and, in the alternative to her Section 1983 claim, against Galindo for intentional infliction of emotional distress and invasion of privacy.

3. In compliance with the Order, this Second Amended Complaint does not re-plead the claims against Judges Salvador Sarmiento and Nathan Vu, or the Section 1983 and state-law claims against the Superior Court, which were dismissed without leave to amend. Plaintiff omits those claims solely to comply with the Order and does not waive her right to appellate review of their dismissal. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

4. Plaintiff pleads her claims against Galindo in the alternative, as Federal Rule of Civil Procedure 8(d)(2) and (3) permit. Galindo first became involved through a private referral and was paid privately, and she was later named in an order of the Superior Court entered on the parties' stipulation. If Galindo acted under the authority of the Superior Court's orders, she acted under color of state law and is liable under Section 1983 (Count Three). If instead Galindo acted as a privately engaged therapist, she is not entitled to any immunity derived from the Superior Court's judicial function, and she is liable under California law (Counts Eight and Nine). If instead Galindo during May 2018- December 2018 acted as a privately engaged therapist, she is not entitled to any immunity derived from the Superior Court's judicial function, and she is liable under California law (Counts Eight and Nine) and from December 2018- January 16 2020 Galindo acted under the authority of the Superior Court's orders, she acted under color of state law and is liable under Section 1983 (Count Three).

Plaintiff's claims against the Superior Court (Counts One and Two) do not depend on which alternative is correct.

## II. JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction over Counts One through Three under 28 U.S.C. §§ 1331 and 1343(a).

6. This Court has diversity jurisdiction over Counts Four through Seven under 28 U.S.C. § 1332(a). Plaintiff is a citizen of California. On information and belief, Defendant Maximillian Zanck is a citizen of Wisconsin. The amount in controversy on those counts exceeds $75,000, exclusive of interest and costs. In the alternative, the Court has supplemental jurisdiction over Counts Four through Seven under 28 U.S.C. § 1367(a).

7. This Court has supplemental jurisdiction over Counts Eight and Nine under 28 U.S.C. § 1367(a). Those Counts arise from the same events as Counts One through Three, including Galindo's April 18, 2019 session with Plaintiff, and form part of the same case or controversy.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Orange County, California.

## III. PARTIES

9. Plaintiff Gabriella Black was born on June 2, 2005. She was a minor at all times the events alleged in this complaint occurred. She is domiciled in Humboldt County, California, where she resides, attends California State Polytechnic University, Humboldt, and intends to remain.

10. Defendant Superior Court of California, County of Orange, is a public entity within the meaning of 42 U.S.C. § 12131(1). It conducts the family-law proceeding *Black v. Black*, Orange County Superior Court Case No. 14D000459 (the "Family Case"), between Plaintiff's parents. On information and belief, the Superior Court receives federal financial assistance, including federal funds under Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq.) that support its family-law child-support program.

11. Defendant Miriam Galindo is a psychologist who, on information and belief, practices in Orange County, California, through Jorge Galindo Family Therapist and Associates, Inc. On information and belief, she is a citizen of California. She was not at any relevant time an employee of the Superior Court or of any other public entity. She is sued in her individual capacity.

12. Defendant Maximillian Zanck, also known as Max Zanck, Max Black, Maximilian Black and Dustin Bryant Zanck, is Plaintiff's father.

13. Plaintiff does not know the true names of Defendants sued as Does 1 through 10 and will seek leave to amend when their identities are learned.

## IV. TIMELINESS

14. Plaintiff turned eighteen on June 2, 2023. Under California Code of Civil Procedure § 352(a), the limitations periods applicable to her claims were tolled while she was a minor. Plaintiff filed this action on June 2, 2025, within two years after reaching majority. In addition, Plaintiff's claims against Zanck seek damages suffered as a result of domestic violence, as defined in California Family Code §§ 6203 and 6211(e), and are governed by California Code of Civil Procedure § 340.15(a), which allows three years from the last act of domestic violence by the defendant against the plaintiff. Zanck's last such act alleged here occurred during March 2023and that period, tolled during Plaintiff's minority, did not expire until June 2, 2026. Plaintiff's claims are timely.

## V. FACTUAL ALLEGATIONS

### A. Zanck's Abuse of Plaintiff

15. Plaintiff's parents married in 2002 and separated in 2014. Zanck filed for dissolution in the Family Case in 2014, and the parents were divorced in 2015. Plaintiff lived primarily with her mother in Ladera Ranch and visited Zanck under custody orders entered in the Family Case.

16. In 2013, when Plaintiff was eight years old, she watched Zanck try to throw her mother down the stairs of the family home. When Plaintiff tried to call the police, Zanck grabbed the telephone out of her hand.

17. On March 9, 2014, OCSD 14-043013 when Plaintiff was eight years old, after the family attended church in Ladera Ranch, California, Zanck dragged Plaintiff across a street while hitting her and then threw her into a wall, cutting open her heel. When law enforcement officers, arrived at a nearby restaurant, Zanck told Plaintiff he would hurt her further at home if she said anything bad about him, and she was too frightened to tell the officers what had happened.

18.

19. On November 8, 2016, OCSD 161108-0690, Zanck locked Plaintiff and her brothers in a hot car and would not let them out for at least one to two hours. Plaintiff called her mother, and deputies of the Orange County Sheriff's Department responded. Zanck threatened Plaintiff if she told the truth.

20. In or about February 9,2018, when Plaintiff was twelve years old, Zanck picked Plaintiff and her brothers up from their mother's home and later that evening told them to pack a bag of clothes and school supplies. Zanck told the children that he was leaving the country for a wedding. Instead of returning the children to their mother, Zanck had them taken to the apartment of Plaintiff's aunt, Jessica, where they were to stay while he was away. The children were given explicit instructions not to contact their mother, and Zanck told them there would be consequences if they tried.

21. While the children were at the apartment, Plaintiff's aunt displayed her gun on the kitchen counter and told the children that if they called their mother and told her, she would kill their mother and throw her body in a dumpster. When Plaintiff told her cousin that she wanted to call her mother because she did not feel safe there and wanted to go home, her cousin warned her not to, because the aunt was not joking, and told Plaintiff that the aunt and Zanck had discussed ways they would kill Plaintiff's mother and hide her body so it would not be found.

22. In 2017 or 2018, at Zanck's condominium in Ladera Ranch, Zanck locked Plaintiff, alone, in his garage with a car engine running for about thirty minutes. The garage door was

closed, the doors were locked, and Zanck had disabled the mechanism that opened the main garage door, so Plaintiff could not get out.

23. Zanck repeatedly humiliated Plaintiff about her weight throughout her childhood, from 2013- final in person contact. Among other things, he made her stand on a scale while eating, made her watch liposuction videos and told her she should consider the procedure, and made her write out the Ten Commandments as a punishment for being "a sinner for being fat," told Plaintiff she would burn in Hell for the mortal sin of gluttony, and Zanck instructed her brothers to punish her by throwing matchbox cars at her as her "stoning" punishment.

24. On October 23, 2017, when Plaintiff was twelve, Zanck physically grabbed Plaintiff at Ladera Ranch Middle School and dragged her through the school while she screamed for help, in front of students and staff. School staff and law enforcement met with the parents for about two hours; Plaintiff said she would kill herself rather than go with Zanck. It was agreed that Plaintiff would go home with her mother.

25. A few days later, while Plaintiff was a passenger in her mother's car near her brother's school, Zanck suddenly drove his car toward them and stopped within inches of the side of the car where Plaintiff was sitting. Plaintiff screamed in terror and threw up her hands to protect herself.

26. On May 18, 2019, Zanck locked Plaintiff and her brothers in his car, with the windows up and locked, for about two hours while he worked in his office in Irvine.

27. In or about September 2019, Zanck chased Plaintiff. To get away from him, Plaintiff jumped into a ditch and kept running, and she sprained her ankle.

28. On October 19, 2019, Zanck came to Plaintiff's home in a rage, ordered Plaintiff into his car, and repeatedly ordered her to "go get your brothers and quit the shit," leaving Plaintiff shaking and crying. Zanck went to the door where Plaintiff stood beside her mother while Zanck yelled threats and obscenities, such as "stupid fucking cunt," as Zanck banged and kicked the door, rang the doorbell until it broke, leaving Plaintiff terrified for her life.

The next day, Zanck returned and engaged in the same abusive and harassing conduct while Plaintiff cowered for her life and was fearful to leave her room.

29. As a result of Zanck's conduct, Plaintiff developed severe anxiety surrounding contact with him. Before court-ordered visits she suffered nausea and vomiting, sleep disruption, declining grades, and blood pressure readings as high as 195/85. As a university student, Plaintiff has asked California State Polytechnic University, Humboldt, not to disclose any information about her to Zanck, and has informed university police that Zanck is an abusive parent and that she wants him to stay away from her.

**B. The Superior Court's Court-Forced Therapy Program**

30. In the Family Case, the Superior Court ordered Plaintiff, then a minor, to participate in custody evaluation, therapy, and visitation. On December 11, 2017, the Superior Court appointed a private custody evaluator. By stipulated order filed May 16, 2018, the Superior Court authorized the evaluator to select and for the evaluator to implement a new therapist for the children, without returning to the court, impermissibly delegating judicial authority and depriving Plaintiff of her due process rights. The evaluator selected Galindo, her business associate, who was working alongside the evaluator and Dolnick in multiple other cases such as Minto v. DiNicola, Frey v. Frey, Dobson v. Dobson and several others.

31. The evaluator specified that Galindo was to provide individual therapy. In letters dated on or about May 25, 2018 and August 7, 2018, the evaluator described Galindo's role as **individual therapy** for Plaintiff, with a reunification therapist yet to be identified. Neither letter called for conjoint, family, or reunification therapy with Zanck.

32. No order of the Superior Court appointed Galindo or defined her role in 2018. Galindo's involvement came about through a private referral. In or about July 2018, Galindo met with Plaintiff's parents and began seeing Plaintiff, and in July and September 2018 Plaintiff's mother paid Galindo privately for individual therapy for Plaintiff. Plaintiff told Galindo that she did not want to be treated by her. Sometime later, Galindo produced altered intake forms that were forged, or back dated, or altered.

33. In multiple writings Galindo later acknowledged that, from July 2018, she had been conducting "reunification" therapy with Plaintiff rather than the individual therapy the evaluator had specified. No one obtained Plaintiff's consent to reunification therapy, and California law does not permit a court to order family reunification services as part of a custody or visitation proceeding. Cal. Fam. Code § 3026.

34. In November 2018, and again in writing on December 18, 2018, Galindo closed her case.

35. By order filed December 20, 2018, two days after Galindo had closed her case in writing, and entered on the parties' stipulation, the Superior Court appointed Galindo as therapist for the family, and it authorized Galindo to determine when and how the children, including Plaintiff, would meet with Zanck. The stipulation appears void on its face because the stipulation is based on Family Code § 3190, that requires judicial findings. The parents cannot stipulate to provide themselves judicial powers, and the Stipulation improperly delegated sovereign duties of the Court to Galindo.

36. On May 8, 2019, the Superior Court ordered Galindo to report to the court on the parents' compliance with court orders, the parents' attitudes, visits, and overnight visitation. By a further stipulated order filed June 18, 2019, the Superior Court ordered that recommendations of its appointees be followed. In open court, the attorney for Zanck announced that he and Galindo had ex parte calls at night, which are prohibited and appear to have violated Plaintiff's privacy.

37. These orders made court-forced therapy and court-ordered visitation a service, program, or activity of the Superior Court (the "Court-Forced Therapy Program"). Plaintiff did not choose to participate; she was required to. The Superior Court turned over its powers to Galindo and the appointed custody evaluator and, under the first alternative alleged in paragraph 36, Galindo, whose authority over Plaintiff in that event derived entirely from the Superior Court's orders.

38. Plaintiff pleads Galindo's role in the alternative. Fed. R. Civ. P. 8(d)(2)–(3). First, to the extent Galindo's authority over Plaintiff derived from the Superior Court's orders,

including the December 20, 2018 order, Galindo exercised governmental power delegated to her by the Superior Court to decide whether, when, and how Plaintiff would have contact with Zanck. Second, and in the alternative, Galindo acted as a privately engaged therapist and not as an arm of the Superior Court: she came to the case through a private referral; she was paid privately; she provided reunification therapy that the Superior Court never ordered and could not lawfully order; and she had closed her case before the December 20, 2018 order was filed. Under the second alternative, Galindo's treatment of Plaintiff was not a judicial or quasi-judicial function. Regardless, Galindo, Cater, Dolnick, and Zanck had concealed relationships that required disclosure to induce Plaintiff to become a client, divulge her innermost thoughts and the group preyed upon her, resulting in additional child abuse, free speech retaliation, violation of Plaintiff's due process rights, interference with familial rights and resulted in grave harm. Plaintiff's therapy and family court is not a matter of public interest.

39. Plaintiff objected to the program's direction. Before Galindo's appointment, Plaintiff was already receiving counseling for the effects of her father's abuse from a domestic-violence counselor at Laura's House, an outpatient therapy Plaintiff elected and she repeatedly asked to continue with that counselor instead of Galindo interfering with the existing patient relationship. That request was refused.

**C. Plaintiff's Disability**

40. On April 9, 2019, Plaintiff was sent home from school by the school nurse and taken to Kaiser Permanente in Mission Viejo, where she was referred to the hospital. Her treating physician wrote a note dated April 9, 2019 stating that Plaintiff was in severe distress over visits with her father, that the visits were causing her emotional and physical problems, including nausea, vomiting, and loss of sleep, and that her school performance was declining, and asking that this be taken into consideration. Plaintiff's mother delivered the note to the Superior Court's appointed custody evaluator.

41. On April 10, 2019, Plaintiff underwent emergency surgery for ovarian torsion and removal of an ovarian cyst. After the surgery she could not walk normally, used a

wheelchair for about a month, and was on pain medication. Her physicians directed her to rest, and several of them advised that she should not be required to be around Zanck because contact with him was causing her serious physical and psychological stress and harm.

42. In or about September 2019, Plaintiff sprained her ankle while fleeing Zanck, as alleged in paragraph 26. She was treated at Kaiser Urgent Care and was placed on crutches and prescribed a wheelchair for four to six weeks.

43. Plaintiff has also been diagnosed by psychiatrists at Kaiser Permanente with post-traumatic stress disorder, depression, and anxiety, which substantially limit her ability to sleep, eat, concentrate, learn, and regulate her cardiovascular and digestive functions, particularly when she is forced into contact with Zanck.

44. Each of these impairments substantially limited one or more of Plaintiff's major life activities, including walking, standing, sleeping, eating, concentrating, and learning, and the operation of major bodily functions, within the meaning of 42 U.S.C. § 12102(1)–(2). An impairment lasting or expected to last less than six months can be substantially limiting. 28 C.F.R. § 35.108(d)(1)(ix). Plaintiff was a qualified individual with a disability: she met the essential eligibility requirements for participation in the Court-Forced Therapy Program, which she was ordered to attend.

**D. Denial of Reasonable Modifications and Disability-Based Treatment**

45. On March 24, 2019, Plaintiff was ill but attended a court-ordered visit because she feared the consequences of missing it. Galindo declared that there was nothing wrong with her. Galindo was out of scope to engage in the practice of medicine and demand medical records of Gabriella and dispense medical advice when Galindo was merely an individual, mental health therapist to Plaintiff.

46. On April 18, 2019, eight days after surgery, Plaintiff arrived at Galindo's office in a wheelchair. Plaintiff's mother had notified Galindo of the surgery before the session. Plaintiff asked to reschedule because she was exhausted and in pain, but her request was refused and her complaints were dismissed as "crying wolf." Galindo instead forced Plaintiff, then thirteen, to participate in a joint session with Zanck in which Galindo directed

Plaintiff to confront him, to chant “I am angry,” and to attribute her memories of his abuse to her own anger.

47. During the session, Galindo forced Plaintiff get up out of her wheelchair and walk around Galindo’s office, and when Plaintiff stood up, Galindo folded up the wheelchair. After the session, Plaintiff collapsed, shaking and vomiting. Plaintiff required immediate medical care afterwards and bled profously.

48. Galindo also permitted Zanck, and at times Ashley Zanck, to be present in sessions in which Plaintiff’s medical condition was discussed, and demanded Plaintiff’s medical information, over Plaintiff’s objection.

49. After April 2019, the Superior Court, through its functionaries, treated Plaintiff’s disability-related symptoms — her physical illness before visits, her distress, and her resistance to contact with Zanck — as misconduct. Plaintiff endured free-speech retaliation and disability discrimination, resulting in physical and psychological injury.

50. On August 20, 2019, the Superior Court’s appointed evaluator issued an interim recommendation that “Gabriella’s behavior and negativity is an ongoing and chronic issue” requiring further therapeutic intervention.

51. O September 30, 2019, Galindo filed a report with the Superior Court that omitted the letter Plaintiff had written at Galindo’s request describing Zanck’s abuse.

52. No one on behalf of the Superior Court modified the Court-Forced Therapy Program to account for Plaintiff’s disabilities: sessions were not rescheduled or shortened, Plaintiff was not permitted to continue with the domestic-violence counselor she was already seeing, her physicians’ advice was not acted on, and contact with Zanck continued to be required.

53. The Superior Court had actual notice of Plaintiff’s disabilities and of her need for modifications. The Superior Court administered the Court-Forced Therapy Program through its appointed custody evaluator and through Galindo, whom it had ordered to report to it on visitation and on the parties’ compliance with its orders. The Superior Court’s appointed evaluator received the April 9, 2019 physician’s note described in paragraph 38, and Galindo was notified of Plaintiff’s surgery before the April 18, 2019 session and saw

Plaintiff arrive in a wheelchair. On information and belief, Plaintiff's surgery, her physical and emotional symptoms, and her physicians' advice were also brought to the Superior Court's attention in filings and proceedings in the Family Case during 2019. The Superior Court nonetheless continued to require Plaintiff's participation without modification, which was deliberate indifference to her federally protected rights.

**E. Plaintiff's Injuries**

54. As a direct result of Defendants' conduct, Plaintiff suffered physical injury, including her April 18, 2019 collapse and aggravation of her post-surgical condition; severe emotional distress, anxiety, humiliation, fear, and suicidal ideation; and economic loss, including the cost of past and future medical and psychological treatment, including ketamine therapy for post-traumatic stress disorder.

## VI. CLAIMS FOR RELIEF

### COUNT ONE

Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132

(Against the Superior Court)

55. Plaintiff incorporates paragraphs 1 through 50.

56. The Superior Court is a public entity. The Court-Forced Therapy Program is a service, program, or activity of the Superior Court, which the Superior Court provided directly and through its appointees, including Galindo. 28 C.F.R. § 35.130(b)(1).

57. Plaintiff was a qualified individual with a disability.

58. The Superior Court, directly and through its appointees, excluded Plaintiff from participation in and denied her the benefits of the Court-Forced Therapy Program, and otherwise discriminated against her, by reason of her disability, including by (a) failing to make reasonable modifications to the program that were necessary to avoid discrimination on the basis of disability, 28 C.F.R. § 35.130(b)(7); and (b) treating the symptoms of her disabilities as "negativity" and noncompliance and continuing to require contact with Zanck on that basis.

59. Title II validly abrogates the Superior Court's Eleventh Amendment immunity as applied to this claim, which concerns access to judicial services. *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004).

60. The Superior Court acted with deliberate indifference: it knew that Plaintiff needed modifications and failed to act. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001).

61. Counts One and Two do not depend on which alternative regarding Galindo is correct. Under either alternative, the Superior Court itself ordered Plaintiff into the Court-Forced Therapy Program and into visitation with Zanck, received notice of her disabilities and her need for modifications through its appointed custody evaluator and in the Family Case, and continued to require her participation without modification.

62. Plaintiff is entitled to compensatory and nominal damages, to costs, and, to the extent she is represented by counsel, to reasonable attorneys' fees under 42 U.S.C. § 12205.

## COUNT TWO

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

(Against the Superior Court)

63. Plaintiff incorporates the preceding paragraphs.

64. The Superior Court's program or activity receives federal financial assistance, and the Superior Court waived its Eleventh Amendment immunity to Section 504 claims by accepting those funds. 42 U.S.C. § 2000d-7.

65. For the reasons alleged in Count One, the Superior Court excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination under that program solely by reason of her disability, with deliberate indifference.

66. Plaintiff is entitled to compensatory and nominal damages, to costs, and, to the extent she is represented by counsel, to reasonable attorneys' fees under 29 U.S.C. § 794a(b).

**COUNT THREE**

42 U.S.C. § 1983 — Fourteenth Amendment

(Against Galindo)

67. Plaintiff incorporates the preceding paragraphs.

68. This Count is pleaded under the first alternative alleged in paragraph 36, and in the alternative to Counts Eight and Nine. Under that alternative, Galindo acted under color of state law. Her authority over Plaintiff existed only by virtue of the Superior Court's orders, and the Superior Court delegated to her the governmental power to direct whether, when, and how Plaintiff would have contact with Zanck.

69. The conduct alleged in this Count — requiring a thirteen-year-old post-surgical patient to get out of her wheelchair and walk, folding up her wheelchair so she could not use it, and disclosing her medical condition to others — was not a report, recommendation, or discretionary judgment submitted to the Superior Court for decision, and it was not part of the function of resolving any dispute between the parties to the Family Case.

70. By that conduct Galindo deprived Plaintiff of her Fourteenth Amendment rights to bodily integrity and to the privacy of her medical information, and acted with deliberate indifference to a known risk of physical harm, which in fact occurred.

71. Galindo's conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights, warranting punitive damages.

**COUNT FOUR**

Battery

(Against Zanck)

72. Plaintiff incorporates the preceding paragraphs.

73. Zanck intentionally touched Plaintiff in a harmful and offensive manner without her consent, including by dragging her across a street while striking her and throwing her into a wall, and by dragging her through Ladera Ranch Middle School on October 23, 2017. Plaintiff was harmed, and Zanck's conduct was a substantial factor in causing her harm.

74. Zanck acted with malice, oppression, and fraud within the meaning of California Civil Code § 3294.

**COUNT FIVE**

Assault

(Against Zanck)

75. Plaintiff incorporates the preceding paragraphs.

76. Zanck acted with intent to cause, and did cause, Plaintiff to reasonably fear imminent harmful contact, including when he drove his car toward the side of the car in which she was seated in late October 2017, and when he chased her in or about September 2019 until she fled into a ditch and injured her ankle. Plaintiff was harmed, and Zanck's conduct was a substantial factor in causing her harm.

77. Zanck acted with malice, oppression, and fraud within the meaning of California Civil Code § 3294.

**COUNT SIX**

False Imprisonment

(Against Zanck)

78. Plaintiff incorporates the preceding paragraphs.

79. Zanck intentionally and without lawful privilege confined Plaintiff against her will, including by locking her alone in his garage with a car engine running and the garage-door opener disabled in 2017 or 2018, by locking her in a hot car for at least one to two hours in November 2016, and by locking her in his car with the windows closed for about two hours on May 18, 2019. Plaintiff was harmed, and Zanck's conduct was a substantial factor in causing her harm.

80. Zanck acted with malice, oppression, and fraud within the meaning of California Civil Code § 3294.

**COUNT SEVEN**

Intentional Infliction of Emotional Distress

(Against Zanck)

81. Plaintiff incorporates the preceding paragraphs.

82. Zanck's conduct toward Plaintiff, a child in his care, as alleged in Section V.A, was extreme and outrageous. That conduct included leaving Plaintiff, then twelve, with instructions not to contact her mother and a warning of consequences if she did, with a relative who displayed a gun and threatened to kill her mother. Zanck intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability that she would suffer it. Plaintiff suffered severe emotional distress, including the physical symptoms alleged above, and Zanck's conduct was a substantial factor in causing it.

83. Zanck acted with malice, oppression, and fraud within the meaning of California Civil Code § 3294.

**COUNT EIGHT**

Intentional Infliction of Emotional Distress

(Against Galindo, in the Alternative)

84. Plaintiff incorporates the preceding paragraphs, except those alleging that Galindo acted under color of state law or under the authority of the Superior Court's orders. This Count is pleaded under the second alternative alleged in paragraph 36, and in the alternative to Count Three.

85. Galindo was Plaintiff's individual therapist and held a position of trust and authority over her. Knowing that Plaintiff, then thirteen, had undergone emergency surgery eight days earlier, Galindo refused Plaintiff's request to reschedule the April 18, 2019 session, dismissed her pain as "crying wolf," required her to confront in person the father whose abuse she had reported, directed her to attribute her memories of that abuse to her own anger, had her get out of her wheelchair and walk, and folded up the wheelchair. That conduct was extreme and outrageous.

86. Galindo intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability that she would suffer it. Plaintiff suffered severe emotional distress, including her collapse, shaking, and vomiting after the session, and Galindo's conduct was a substantial factor in causing it.

87. Galindo acted with malice and oppression within the meaning of California Civil Code § 3294.

**COUNT NINE**

Invasion of Privacy, California Constitution, Article I, Section 1

(Against Galindo, in the Alternative)

88. Plaintiff incorporates the preceding paragraphs, except those alleging that Galindo acted under color of state law or under the authority of the Superior Court's orders. This Count is pleaded under the second alternative alleged in paragraph 36, and in the alternative to Count Three.

89. Plaintiff had a legally protected privacy interest in her medical and psychological information and, as Galindo's patient, a reasonable expectation that Galindo would not share that information with others over her objection.

90. Galindo seriously invaded that interest by demanding Plaintiff's medical information over her objection and by discussing Plaintiff's medical condition in sessions attended by Zanck and, at times, Ashley Zanck, over Plaintiff's objection. Plaintiff was harmed, and Galindo's conduct was a substantial factor in causing her harm.

91. Galindo acted with malice and oppression within the meaning of California Civil Code § 3294.

**VII. PRAYER FOR RELIEF**

Plaintiff requests judgment as follows:

a. On Counts One and Two, compensatory and nominal damages against the Superior Court;

b. On Count Three or, in the alternative, Counts Eight and Nine, compensatory and punitive damages against Galindo;

c. On Counts Four through Seven, compensatory damages in an amount to be proven at trial, and punitive damages, against Zanck;

d. Costs of suit, and reasonable attorneys' fees to the extent Plaintiff is represented by counsel, under 42 U.S.C. §§ 1988 and 12205 and 29 U.S.C. § 794a(b);

e. Pre- and post-judgment interest as allowed by law; and

f. Such other relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 7, 2026

Respectfully submitted,



GABRIELLA BLACK

Plaintiff in Pro Per