Plaintiff Gabriella Black
6 Eric St
Mission Viejo, CA 92694
(480) 259-8288
supremeg008@gmail.com
PLAINTIFF PRO SE

FILED
CLERK, U.S. DISTRICT COURT
11/24/2026
CENTRAL DISTRICT OF CALIFORNIA
BY cld DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| GABRIELLA BLACK,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE; MIRIAM GALINDO; MAXIMILLIAN ZANCK; and DOES 1-10,<br><br>Defendants. | CASE NO. 25-CV-01217-JLS-RAO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT MIRIAM GALINDO'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (Dkt. 126)**<br><br>Hearing Date: December 2, 2026<br>Time: 10:00 a.m.<br>Courtroom: 590, 5th Floor<br>Magistrate Judge Rozella A. Oliver |

TO THE HONORABLE ROZELLA A. OLIVER, UNITED STATES MAGISTRATE JUDGE, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Plaintiff GABRIELLA BLACK submits this opposition to Defendant Miriam Galindo's Motion to Dismiss the Second Amended Complaint (Dkt. 126). The

opposition is based on the following Memorandum of Points and Authorities, the pleadings and records on file, and any argument the Court permits.

To the extent this opposition is untimely under L.R. 7-9, Plaintiff, who is self-represented, respectfully asks the Court to consider it. Plaintiff misunderstood the dates, believed the hearing had been vacated, and did not upload all of her papers when she filed on November 23, 2026. After realizing her mistake, she waited so that the proof of service would show an accurate service date, and she was then ill and working. Tonight was her first opportunity to file. She apologizes to the Court and the parties for the delay and does not object to a reasonable extension of Defendant's time to reply.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Galindo's motion rests on a false choice. She argues that if the conduct alleged in Count Three was part of the work the Family Court delegated to her, she is immune, and if it was not, she was a private therapist who did not act under color of state law. (Dkt. 126 at 7:7-16, 8:20-26.) Section 1983 does not work that way. Whether a defendant acted under color of state law and whether she is entitled to absolute immunity are separate questions with separate tests. A police officer who uses excessive force during an arrest is a state actor, and he has no absolute immunity for the force he used. The same is true here.

Galindo held power over Gabriella only because the Superior Court gave it to her. The December 20, 2018 order, which Galindo herself helped write, required the family to follow her instructions and gave her authority to decide when and how Gabriella would be in the same room as the father she had reported for abuse. On April 18, 2019, eight days after emergency surgery, Gabriella was in Galindo's office because that order put her there. Galindo used that authority to refuse Gabriella's request to reschedule, to force a joint session with Zanck, to make Gabriella get out of her wheelchair and walk, and to fold up the wheelchair so she could not use it. Gabriella collapsed, shaking, vomiting, and bleeding. (SAC ¶¶ 41, 46-47.) That is state

action. And none of it was a judicial function. Galindo concedes as much: she does not claim immunity for "every physical act undertaken during therapy." (Dkt. 126 at 8:20-22.)

Count Three states a claim. If the Court disagrees, it should grant leave to amend, because the proposed Third Amended Complaint and Galindo's own sworn testimony supply additional facts that answer every point she raises.

## II. THE STATE-LAW CLAIMS ARE NOT ADDRESSED HERE

The Court has indicated that it will not take up the state-law claims until it determines that a federal claim survives. Plaintiff therefore limits this opposition to Count Three. She does not concede any argument Galindo makes as to Counts Eight and Nine, and she asks to be heard on them if and when the Court reaches them. If no federal claim against Galindo survives, the appropriate course is to decline supplemental jurisdiction over those counts without prejudice, not to dismiss them on the merits. 28 U.S.C. § 1367(c)(3).

## III. FACTS ALLEGED

Gabriella was a child when these events occurred. (SAC ¶ 9.) Her father, Zanck, abused her for years, including by dragging her through her middle school in October 2017 while she screamed for help. (SAC ¶¶ 16-27.) In the Family Case, the Superior Court ordered her into a custody evaluation, therapy, and visitation. (SAC ¶ 30.) By a May 2018 order, the court let its appointed evaluator, Cater, choose a therapist for the children without returning to court. Cater chose Galindo, her business associate. (SAC ¶ 30.) Gabriella was already seeing a domestic-violence counselor she had chosen at Laura's House, and she asked to stay with that counselor. The request was refused. (SAC ¶ 39.)

On December 20, 2018, on a stipulation Galindo helped prepare, the Superior Court appointed Galindo as family therapist and authorized her to determine when and

how the children, including Gabriella, would meet with Zanck. (SAC ¶ 35; TAC ¶ 85.) The order required the family to cooperate with her instructions and provided for reports on the progress of contact. (Dkt. 126 at 4:26-5:2.) On May 8, 2019, the court ordered Galindo to report on the parents' compliance with court orders, their attitudes, and visitation. (SAC ¶ 36.) On June 18, 2019, it ordered that the recommendations of its appointees be followed. (SAC ¶ 36.) These orders made court-ordered therapy and visitation a program of the Superior Court, and Gabriella did not choose to participate. She was required to. (SAC ¶ 37.)

On April 10, 2019, Gabriella underwent emergency surgery for ovarian torsion and removal of an ovarian cyst. She could not walk normally and used a wheelchair for about a month. Several of her physicians advised that she should not be required to be around Zanck. (SAC ¶ 41.) Her mother told Galindo about the surgery before the next session. (SAC ¶ 46.)

On April 18, 2019, eight days after surgery, Gabriella arrived at Galindo's office in a wheelchair. She asked to reschedule because she was exhausted and in pain. Galindo refused and dismissed her complaints as "crying wolf." She forced Gabriella, then thirteen, into a joint session with Zanck. (SAC ¶ 46.) During the session, Galindo made Gabriella get out of her wheelchair and walk around the office, and when Gabriella stood, Galindo folded up the wheelchair. Afterward, Gabriella collapsed, shaking and vomiting. She needed immediate medical care and bled profusely. (SAC ¶ 47.) Galindo also discussed Gabriella's medical condition in sessions attended by Zanck and, at times, Zanck's partner Ashley, and demanded Gabriella's medical information over her objection. (SAC ¶ 48.)

## IV. LEGAL STANDARD

A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pro se complaint is construed liberally. *Erickson v. Pardus*, 551

U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A court may take judicial notice of another court's order, but not of the truth of disputed facts recited in it. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). Leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## V. ARGUMENT

### A. The SAC Pleads New Facts and a New Theory, Which Is What Leave to Amend Is For

Galindo argues that the SAC "repackages" conduct alleged in the First Amended Complaint. (Dkt. 126 at 6:4-21.) But the Court dismissed with leave to amend. (Dkt. 120.) An amended complaint is supposed to plead the same events more precisely and under a theory that answers the Court's concerns. That is what the SAC does.

The SAC narrows Count Three to specific physical conduct and the disclosure of medical information, and it alleges that this conduct was not a report, recommendation, or judgment submitted to the court and was not part of resolving any dispute between the parties. (SAC ¶ 69.) It alleges for the first time the terms of the orders that gave Galindo her authority (SAC ¶¶ 35-37); that Galindo was told of the surgery in advance (SAC ¶ 46); that Gabriella asked to reschedule and was refused and mocked (SAC ¶ 46); that Galindo folded up the wheelchair so Gabriella could not use it (SAC ¶ 47); and that Gabriella needed immediate medical care and bled profusely (SAC ¶ 47). It also pleads the state-action question in the alternative, as Rule 8(d)(2) allows. (SAC ¶¶ 4, 38.) Those are material changes, and they go directly to the two grounds of the prior ruling.

### B. Galindo Acted Under Color of State Law

#### 1. Exercising Authority Delegated by a Court Order Is State Action, Even by a Privately Paid Professional

A person acts under color of state law when she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). In *West*, a private physician who treated a prisoner under contract with the State acted under color of state law, even though he exercised independent medical judgment and was not a state employee. *Id.* at 54-57. What mattered was that the State had placed the patient in his care and the patient could not go elsewhere. *Id.* at 55.

The Ninth Circuit recognizes four tests for state action: public function, joint action, governmental compulsion or coercion, and governmental nexus. Satisfying any one is enough. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012). The inquiry is fact-bound. In *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir. 2020), the court held that a private mental-health provider that involuntarily detained a patient under state statutory authority could be a state actor, and it reversed a ruling to the contrary. Galindo's private status and private payment do not end the inquiry. They barely begin it.

#### 2. The SAC Satisfies the Compulsion, Nexus, and Public-Function Tests

Gabriella was not Galindo's voluntary patient. The Superior Court ordered her into the program, required the family to follow Galindo's instructions, authorized Galindo to decide when and how Gabriella would face Zanck, directed Galindo to report on compliance, and ordered that its appointees' recommendations be followed. (SAC ¶¶ 30, 35-37, 68.) Gabriella had asked to stay with her own counselor and was refused. (SAC ¶ 39.) A thirteen-year-old who arrives in a wheelchair, asks to go home, and is told no is not dealing with a private therapist she can walk away from. She is

dealing with the court's chosen agent, enforcing the court's order, with the threat of a report to the court behind every instruction.

That is governmental compulsion and a close nexus. It is also a public function. The power to decide whether and how a child visits a parent belongs to the court. California law does not allow a court to hand a therapist the discretion to decide whether visitation occurs. *In re Donnovan J.*, 58 Cal. App. 4th 1474, 1477-78 (1997); see *In re Chantal S.*, 13 Cal. 4th 196, 213-14 (1996). When a court nonetheless gives that power to a private professional, she exercises a power traditionally and exclusively reserved to the State.

**3. Galindo's "Particular Conduct" Argument Fails**

Galindo argues that the court did not direct her to make Gabriella walk or to fold the wheelchair, so those acts were private. (Dkt. 126 at 7:7-16.) The argument misreads the law. The physician in *West* was not told by the State how to treat the prisoner's injury either. His conduct was state action because the State gave him authority over a patient who could not refuse him. 487 U.S. at 55-56. A state actor does not leave the color of law each time she makes a choice the State did not specifically direct. Misuse of delegated power is still an exercise of that power. *Classic*, 313 U.S. at 326.

The April 18, 2019 session existed only because the court's orders required it. Gabriella was in the room, in a wheelchair, eight days after surgery, because the order gave Galindo authority to set the time and conditions of her contact with Zanck and required the family to comply. (SAC ¶¶ 35, 46, 68.) Every act Count Three challenges happened inside that compelled session and was made possible only by the authority the court conferred.

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003), does not help Galindo. The court there held that a guardian ad litem was not a state actor because the guardian's duty runs to the child as an independent advocate, much like a public defender, and the

guardian does not exercise the State's power over the child. *Id.* at 1093-96. Galindo was not Gabriella's advocate. She was the court's instrument for compelling Gabriella's contact with the father she had reported for abuse, over Gabriella's objection. *Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989), is also inapposite. It concerned a private citizen's arrest and asked whether the police had joined in it. Here, the State did not merely stand by. It created the authority Galindo used.

**4. Galindo's Admissions Confirm That She Acted Under the Court's Orders**

Galindo's motion relies on the December 20, 2018 order to show that her role "extended beyond ordinary private counseling." (Dkt. 126 at 8:9-14.) She cannot rely on the order to claim the court's immunity and at the same time disclaim it to escape the court's responsibilities. In sworn testimony in the Family Case, Galindo said the December 20, 2018 order "articulates what my role is with this family," and that after the court's March 2019 order directing the family to "restart" therapy with her, she performed her services subject to that order. (Pl.'s Suppl. Mem., Dkt. 99, at 13-14; Pl.'s Exhs., Dkt. 100, Exh. 1 at L43:5-17, L44:25-L45:20.) April 18, 2019 falls squarely within that period. (SAC ¶ 4.) At the pleading stage, the inference that she acted under color of the court's orders is not merely plausible. It is the one she drew herself.

**C. Quasi-Judicial Immunity Does Not Bar Count Three**

Absolute immunity is the exception, and the official who claims it bears the burden of showing that it is justified for the function in question. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). Immunity attaches to functions, not to people or titles. *Forrester v. White*, 484 U.S. 219, 224-29 (1988). Even a judge has no absolute immunity for acts that are not judicial in nature. *Id.* at 229-30. The Ninth Circuit applies the same functional approach to court-connected professionals, and it has made clear that acts outside the core function protected by the immunity are not

protected merely because they occur in connection with a court case. *Miller v. Gammie*, 335 F.3d 889, 896-99 (9th Cir. 2003) (en banc); see *Beltran v. Santa Clara County*, 514 F.3d 906, 908-09 (9th Cir. 2008) (en banc) (no absolute immunity for fabricating evidence).

Galindo acknowledges this. She "does not contend that court appointment immunizes every physical act undertaken during therapy," and she agrees that "treatment and diagnosis alone do not establish entitlement to absolute immunity." (Dkt. 126 at 8:15-22.) Count Three challenges exactly the kind of conduct she concedes is not immune: making a post-surgical child get out of her wheelchair and walk, folding up the wheelchair, and disclosing her medical condition. (SAC ¶ 69.) None of that is deciding a dispute, making a recommendation to the court, or reporting to it. The prior immunity ruling addressed Galindo's court-appointed functions. (Dkt. 126 at 5:10-14.) Count Three does not challenge those functions.

Galindo's fallback, that immunity protects her "decisions concerning the progression and conditions of court-authorized contact" (Dkt. 126 at 8:22-25), does not reach this claim either. Count Three does not seek damages for a decision about the pace of visitation. It seeks damages for what Galindo did to Gabriella's body and her medical privacy. To the extent there is any doubt about where a given act falls, that is a factual question about function, and it cannot be resolved against Gabriella on the pleadings, particularly where Galindo bears the burden. *Antoine*, 508 U.S. at 432.

Two further points weigh against immunity. First, the December 20, 2018 order was entered on a stipulation Gabriella's mother had withdrawn, two days after Galindo had closed her case in writing, without the findings Family Code § 3190 requires. (SAC ¶¶ 34-35; TAC ¶¶ 85-87.) Galindo asks the Court to treat that order as conclusively defining her role, but the Court may notice the order's existence, not the disputed facts surrounding it. *Lee*, 250 F.3d at 689-90. Second, quasi-judicial immunity protects neutral participants who exercise discretionary judgment on the court's behalf. Galindo helped draft the stipulation that conferred her own powers,

after admitting under oath that she had no court authority when she began treating the family in 2018. (Dkt. 100, Exh. 1 at L39:1-13, L47:1-16; TAC ¶¶ 83, 85.) Those facts, taken as true, are inconsistent with the neutrality the immunity presupposes.

### D. The SAC Alleges a Fourteenth Amendment Violation

#### 1. Bodily Integrity

The Due Process Clause protects a right to be free from unjustified intrusions on personal security and bodily integrity. *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977). Where the state actor has time to deliberate, deliberate indifference to a known risk of serious harm satisfies the "shocks the conscience" standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 851-53 (1998); *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

Galindo had every opportunity to deliberate. She knew of the surgery before the session. (SAC ¶ 46.) She saw Gabriella arrive in a wheelchair. (SAC ¶ 53.) Gabriella asked to go home. (SAC ¶ 46.) Galindo refused, called her complaints "crying wolf," made her stand and walk, and folded up the wheelchair so she could not sit back down. (SAC ¶¶ 46-47.) Gabriella collapsed, shaking, vomiting, and bleeding, and needed immediate medical care. (SAC ¶ 47.) A person clothed with the State's authority over a thirteen-year-old surgical patient who deliberately takes away her wheelchair and makes her walk is not exercising "professional judgment." (Dkt. 126 at 8:4-6.) The SAC alleges deliberate indifference to a known risk of physical harm, and the harm occurred. (SAC ¶ 70.) That states a claim.

#### 2. Medical Privacy

The Constitution protects an individual's interest in avoiding disclosure of personal medical information. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998). Galindo argues that the SAC does not identify the information disclosed. (Dkt. 126 at 8:1-6.) It does. Gabriella had just undergone emergency surgery for ovarian torsion and removal of an ovarian cyst. (SAC ¶ 41.)

Galindo discussed her medical condition in sessions attended by her father and, at times, her father's partner, who was openly hostile to her, and demanded her medical information over her objection. (SAC ¶ 48; TAC ¶ 108.) Gynecological information about a thirteen-year-old girl, disclosed to the parent she had reported for abuse and to his partner, is about as sensitive as medical information gets. Rule 8 does not require more detail than that.

**E. If the Court Finds Any Defect, It Should Grant Leave to Amend**

Galindo asks for dismissal without leave to amend on the ground that amendment would be futile. (Dkt. 126 at 11:12-20.) It would not be. Plaintiff has requested leave to file a proposed Third Amended Complaint, and both that pleading and the record of the Family Case supply facts that answer each of Galindo's arguments. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (presumption in favor of leave absent prejudice, bad faith, undue delay, or futility).

First, joint action. Galindo helped draft the stipulation that conferred her powers, and the court adopted it without a hearing. (Dkt. 100, Exh. 1 at L47:1-16; TAC ¶¶ 85-86.) Zanck's counsel disclosed in open court that he was in regular ex parte contact with Galindo. (TAC ¶ 110.) The court ordered Galindo to "restart" therapy in March 2019, ordered her reports, and relied on them. On December 13, 2019, the judge stated that the facts about alienation he had heard from Galindo were "so heavy" that he had heard nothing to convince him otherwise. (Dkt. 100, Exh. 11 at L125:23-L126:3.) Private parties who act jointly with a judge act under color of state law, even when the judge is immune. *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980).

Second, judicial deception. The proposed TAC alleges that Galindo's September 30, 2019 report withheld Gabriella's letter describing her father's abuse and attributed to her mother a text message and social media posts she never wrote; that Galindo advised Zanck to conceal from the court his acceptance of a job in Texas; and

that these deceptions were material to the October 23, 2019 order removing Gabriella's brothers from the home. (TAC ¶¶ 149, 155-156, 218-224.) A person acting under color of state law who deliberately or recklessly deceives a court in a custody proceeding violates the Fourteenth Amendment. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1146-47 (9th Cir. 2021). Fabricating evidence is not a function protected by absolute immunity. *Beltran*, 514 F.3d at 908-09.

Third, retaliation and conspiracy. The proposed TAC alleges that Galindo labeled Gabriella a "junior alienator" and cut her off from her brothers only after she stopped attending sessions and visits in June 2019, and that Galindo acted in concert with Dolnick, Cater, and White under undisclosed business relationships. (TAC ¶¶ 225-230, 236-241.)

Galindo's own testimony shows these are not speculative. She admitted she was "not court-appointed" when she began treating the family in 2018 and that she relied on the December 20, 2018 order as defining her role once therapy resumed in 2019. (Dkt. 100, Exh. 1 at L39:1-13, L43:5-17.) A plaintiff who can allege facts like these has not exhausted her ability to state a claim.

## VI. CONCLUSION

Gabriella respectfully requests that the Court deny Galindo's motion as to Count Three. In the alternative, she requests leave to file the proposed Third Amended Complaint. She asks that the Court defer any ruling on Counts Eight and Nine until it determines whether a federal claim survives.

DATED: November 24, 2026

Respectfully submitted,

________________________________

GABRIELLA BLACK, Plaintiff pro se

## CERTIFICATE OF COMPLIANCE

The undersigned, a self-represented party, certifies that this brief contains 3,635 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 24, 2026

GABRIELLA BLACK, Plaintiff pro se

**DECLARATION OF PROOF OF ELECTRONIC SERVICE**

I, CHRISTIENNE BLACK, declare the following:

1. I am a resident of Orange County, over the age of 18, and the mother of Gabriella Black, the plaintiff in this case.

2. On November 24, 2026, I served "PLAINTIFF'S OPPOSITION TO DEFENDANT MIRIAM GALINDO'S MOTION TO DISMISS SECOND AMENDED COMPLAINT."

3. I served the attorneys and party named below (each attorney is identified by the party represented) by email at their email addresses listed on the docket of this lawsuit:

| | |
|---|---|
| Counsel for Superior Court | PLin@cmda-law.com |
| David Samani (Dolnick) | David.Samani@lewisbrisbois.com |
| Christopher J. Zopatti (Galindo) | czopatti@ctsclaw.com |
| E. Schumann (Galindo) | Eschumann@ctsclaw.com |
| Anthony V. Martinez (Galindo) | amartinez@ctsclaw.com |
| Jim Rogers (White) | Jrogers@jrrlaw.net |
| Michael Meyers (Zanck) | michael@mhmyerslaw.com |
| Carolyn Cater, Defendant | Ccnish1@aol.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of November 2026 in Ladera Ranch, California.

CHRISTIENNE BLACK